IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NADJALIETTE MONTALVO,** § § § | | |
| **Plaintiff,** § § | | |
| v. § § | Civil Action No. 3:24-cv-303 | |
| **WORLDWIDE FLIGHT SERVICES, INC. and IAS LOGISTICS DFW, LLC, d/b/a PINNACLE LOGISTICS,** § § § § § | **JURY TRIAL DEMANDED** | |
| **Defendants.** § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Nadjaliette Montalvo ("Montalvo"), files this Complaint and respectfully shows as follows:

### I. SUMMARY

1. This Complaint is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiff worked for Defendants as a Carrier Sales Representative. Plaintiff routinely worked in excess of 40 hours per week but was not paid lawfully for doing so because Defendants misclassified Plaintiff as an independent contractor and failed to pay her overtime compensation as required by the FLSA, as well as retaliated against her in violation of the FLSA. Defendants' actions in failing to pay Plaintiff overtime as required by the FLSA were willful.

### II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a significant portion of the facts giving rise to this lawsuit occurred in this District.

4. Plaintiff performed work for Defendants in Dallas, Dallas County, Texas, which is in this District and Division.

### III. PARTIES

5. Plaintiff, Nadjaliette Montalvo ("Montalvo"), is an individual residing in Texas who was employed by Defendants within the meaning of the FLSA. Her consent to proceed in this action is attached as Exhibit A.

6. Defendant, Worldwide Flight Services, Inc. ("WFS"), is a Delaware corporation doing business in Texas with operations throughout the United States and around the world. WFS may be served by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

7. Defendant IAS Logistics DFW, LLC, d/b/a Pinnacle Logistics ("Pinnacle") is a Delaware corporation registered in the state of Texas. Pinnacle may be served by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

### IV. FLSA COVERAGE

8. At all relevant times, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9. At all relevant times, Defendants were part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

10. At all relevant times, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said

enterprise has and has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). Upon information and belief, Defendants had gross receipts in excess of $500,000 (exclusive of excise tax) in each of the years 2021, 2022, and 2023.

11. At all relevant times, Ms. Montalvo was an individual "employee" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07, *see Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326–29 (5th Cir. 1993), and whom Defendants "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

12. Defendants' misclassification of Ms. Montalvo as an independent contractor does not alter her status as an employee for the purposes of the FLSA.

### V.   FACTS

13. Defendants are co-located and headquartered at 222 Las Colinas Blvd. W., Suite 1800N in Irving, Dallas County, Texas.[1]

14. Defendant WFS claims to be the world's largest air cargo handler and one of the leading providers of ground handling and technical services.[2] Defendant WFS:

   a) had the power to hire and fire WFS employees and independent contractors and had this power over Ms. Montalvo during the course of her relevant employment;

   b) was in charge of Ms. Montalvo's schedule;

   c) supervised her work;

   d) misclassified her as overtime-exempt;

---

[1] *See Legal*, WORLDWIDE FLIGHT SERVICES, https://www.wfs.aero/legal (last visited Feb. 6, 2024); *Network*, PINNACLE LOGISTICS, https://www.pinnaclelogistics.com/network (last visited Feb. 6, 2024).
[2] *WFS Announces Acquisition of Pinnacle Logistics, Strengthening Its Cargo Handling Platform in the United States*, WORLDWIDE FLIGHT SERVICES, Sept. 24, 2021, https://www.wfs.aero/wfs-announces-acquisition-of-pinnacle-logistics-strengthening-its-cargo-handling-platform-in-the-united-states [https://perma.cc/3NNB-5E2U].

  e) had knowledge of the overtime hours worked by Ms. Montalvo but failed to provide proper redress or lawful pay for this excessive work;

  f) misclassified her as an independent contractor; and

  g) retaliated against her for exercising her rights under the FLSA.

In short, WFS is, in whole or in part, responsible for the FLSA violations at issue in this lawsuit.

15. Defendant Pinnacle claims to be a leading provider of cargo handling services in the United States, providing freight brokerage and logistics services for e-commerce customers.[3] Defendant Pinnacle:

  a) had the power to hire and fire Pinnacle employees and independent contractors and had this power over Ms. Montalvo during the course of her relevant employment;

  b) was in charge of Ms. Montalvo's schedule;

  c) supervised her work;

  d) misclassified her as overtime-exempt;

  e) had knowledge of the overtime hours worked by Ms. Montalvo but failed to provide proper redress or lawful pay for this excessive work;

  f) misclassified her as an independent contractor; and

  g) retaliated against her for exercising her rights under the FLSA.

In short, Pinnacle is, in whole or in part, responsible for the FLSA violations at issue in this lawsuit.

16. Ms. Montalvo worked for Defendants during the three years prior to the filing of this suit, from approximately November 2020 until December 2023, as a Carrier Sales Representative.

17. As a Carrier Sales Representative, Ms. Montalvo's primary job duty was non-exempt work, consisting of coordinating and scheduling pick-up and/or delivery appointments for assigned customers, and tracking and tracing shipments across various modes of transit.

---

[3] *Id.*

18. Among other non-exempt tasks, Ms. Montalvo spent her workday communicating with Defendants' vendors, customers, and carriers, entering/creating orders for customers through web-based systems, phone, and email, processing invoices, and providing general customer service, consisting of responding to inquiries related to shipment delays, service failures, and/or customer complaints.

19. At all times, Ms. Montalvo was misclassified by Defendants as overtime-exempt. However, Ms. Montalvo's duties made her a non-exempt employee under the FLSA because Ms. Montalvo:

a) did not have as her primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

b) did not exercise discretion or independent judgment with respect to matters of significance or in performing her primary duties;

c) did not have the authority to formulate, affect, interpret, or implement management policies or operating practices;

d) did not carry out major assignments in conducting the operations of the business;

e) did not perform work that affects business operations to a substantial degree;

f) did not have the authority to commit the employer in matters that have significant financial impact;

g) did not have the authority to waive or deviate from established policies and procedures without prior approval;

h) did not have the authority to negotiate and bind the company on significant matters;

i) did not provide consultation or expert advice to management;

j) was not involved in planning long- or short-term business objectives;

    k)    did not investigate or resolve matters of significance on behalf of management;

    l)    did not have the power to hire, fire, or discipline any employees; and

    m)    did not represent the employer in handling complaints, arbitrating disputes, or resolving grievances.

20.    When Ms. Montalvo began her employment in November 2020, Pinnacle classified her as an employee, withheld payroll taxes from her paychecks, and issued her an IRS Form W-2 in the years 2020, 2021, and 2022.

21.    Pinnacle paid Ms. Montalvo a fixed salary plus commission, regardless of how many hours she worked in a single workweek. When she began working for Pinnacle, Ms. Montalvo was paid a salary of $40,000 per year plus a commission of 3% of profits. At the time she resigned as an employee, Ms. Montalvo was paid a salary of $55,000 per year plus a commission of 3% of profits.

22.    Ms. Montalvo routinely worked over 40 hours per week for Defendants. In fact, she would frequently work 60 or more hours in a week.

23.    Pinnacle scheduled Ms. Montalvo to work Monday through Friday from 8:00 a.m. to 5:00 p.m. at a minimum, and required Ms. Montalvo to work additional hours before 8:00 a.m., after 5:00 p.m., and on weekends to meet the needs of their customers.

24.    Pinnacle knew that Ms. Montalvo worked in excess of 40 hours per week and allowed and directed her to work these excessive hours without paying her overtime as required by the FLSA.

25.    A few times during her employment, when she was working especially excessive hours, Ms. Montalvo asked management if they could transfer her to hourly pay with overtime. Management laughed in response and told her that was not an option.

26.    In September 2021, WFS announced the acquisition of Pinnacle.[4]

---

[4] *Id.*

27. After WFS acquired Pinnacle, Ms. Montalvo's employment continued as it had previously, without any change to her employment status, duties, schedule, or compensation.

28. Toward the end of 2022, Ms. Montalvo informed Defendants that she would need to temporarily relocate out-of-state due to a family emergency and requested she be able to work remotely during this time.

29. Rodrigo Herrera, former Senior Vice President of Business Development at Pinnacle[5] and then Vice President at WFS,[6] proposed a solution: Ms. Montalvo could resign from her employment with Defendants and would be hired to do the same work for Defendants remotely as an "independent contractor."

30. Relying on these promises, on or about November 25, 2022, Ms. Montalvo resigned as Defendants' employee.

31. On or about March 6, 2023, Ms. Montalvo signed a "Contractor Agreement" and began working remotely for Defendants as a Carrier Sales Representative. Defendants mailed to Ms. Montalvo company property, including a laptop computer and cellular phone, for her to use in order to carry out her job duties.

32. During this time, Ms. Montalvo's job duties and responsibilities remained the same as when she was properly classified by Defendants as an employee. Despite now being misclassified as an independent contractor, Defendants continued to control all aspects of Ms. Montalvo's work.

33. Specifically, Defendants hired and fired, issued pay, supervised, directed, disciplined, scheduled, and performed all other duties generally associated with that of an employer with regard to Ms. Montalvo.

---

[5] Rodrigo Herrera, LINKEDIN, https://www.linkedin.com/in/rodrigo-herrera-63200915 (last accessed Feb. 6, 2024).
[6] *Our People*, WORLDWIDE FLIGHT SERVICES, https://www.wfs.aero/about-us/our-people (last accessed Feb. 6, 2024).

34. Additionally, Defendants required Ms. Montalvo to work a set schedule and be available to clients at specific times, provided her tools and equipment, maintained control over her opportunity for profit, and otherwise exercised the level of control over Ms. Montalvo typical of an employer.

35. Ms. Montalvo continued to routinely work over 40 hours per week. In fact, Ms. Montalvo frequently worked in excess of 60 hours per week.

36. Defendants knew that Ms. Montalvo worked in excess of 40 hours per week and allowed and directed her to work these excessive hours without paying her overtime as required by the FLSA—the same as when she was properly classified by Defendants as an employee.

37. Ms. Montalvo was paid a flat amount per week plus commissions and did not receive overtime pay for working more than 40 hours per week—the same as or similar to when she was properly classified by Defendants as an employee.

38. In fact, Defendants stated they intentionally structured Ms. Montalvo's independent contractor compensation in this way so it was comparable to her previous compensation when she was properly classified by Defendants as an employee.

39. In September 2023, Ms. Montalvo's manager rejected an invoice she submitted for payment, claiming that the commission listed was incorrect. This was confusing to Ms. Montalvo as she had calculated the commission as she had done previously and it was consistent with what was agreed upon between her and her manager.

40. By October 2023, Ms. Montalvo began experiencing delays in receiving payments—once going three weeks without being compensated—because her manager was late in approving her invoices.

41. Ms. Montalvo spoke to Defendants' Human Resources ("HR") department about these delays and also reported that she had observed her manager making some suspect accounting

moves. For example, she saw spreadsheets where her manager had transferred revenue from higher performing terminals to lower performing terminals to make them look better.

42. Defendants' HR representative told her not to worry, that revenue was not her concern, but that HR would look into it because, in his words, "this wouldn't be the first time I heard some stuff about Pinnacle." Ms. Montalvo is unclear as to what Defendants' HR representative was referring.

43. Also in October 2023, Defendants instructed Ms. Montalvo that she had to be available for customers Monday through Friday and on weekends. She shared this with HR, stating that she was "basically being asked to work round-the-clock," although, according to Defendants, she was an "independent contractor." Her concerns were brushed off and she was told by HR that Defendants could tell her what schedule to work and when.

44. Before the end of the meeting with HR, Ms. Montalvo made it perfectly clear what she thought was taking place:

> Ms. Montalvo: As soon as I started questioning revenue, I noticed a shift. I don't want to lose my job.
> Defendants' HR Representative: You think they're trying to build a case to terminate you?
> Ms. Montalvo: Oh, yeah. 100 percent. Because I know that they're trying to do something they're not supposed to do.

45. Ultimately, Ms. Montalvo was forced to resign from working for Defendants. Her last day of work was December 26, 2023.

46. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Ms. Montalvo overtime compensation and misclassifying her as an independent contractor.

47. Defendants' failure to pay overtime compensation to and misclassifying Ms. Montalvo was neither reasonable nor were the decisions made in good faith.

48. Defendants are liable for Ms. Montalvo's unpaid overtime wages in an amount equal to one-and-one-half times her regular rate of pay, plus liquidated damages in an amount equal to the unpaid overtime wages, as well expert witness fees, attorney fees, costs, and pre- and post-judgment interest at the highest rates allowed by law.

## VI.
### CAUSE OF ACTION:
### FAILURE TO PAY WAGES IN ACCORDANCE WITH AND RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

49. Plaintiff re-alleges and incorporates the above paragraphs as if fully set forth herein.

50. By misclassifying Ms. Montalvo as an independent contractor and failing to pay her overtime at one-and-one-half times her regular rate of pay, Defendants violated the FLSA's overtime provisions.

51. Defendants owe Ms. Montalvo the difference between the rates actually paid and the proper overtime rate.

52. Because Defendants knew or showed reckless disregard for whether their pay practices violated the FLSA, they owe these wages for at least the past three years.

53. Defendants are liable to Ms. Montalvo in an amount equal to all unpaid overtime wages as liquidated damages.

54. Ms. Montalvo is entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## VII. PRAYER

55. WHEREFORE, cause having been shown, Plaintiff prays for relief against Defendants as follows:

a) For an Order pursuant to Section 16(b) of the FLSA finding Defendants jointly and severally liable for unpaid wages due to Plaintiff and for liquidated damages in an equal amount due to Plaintiff;

    b)    For an Order awarding Plaintiff the costs of this action;

    c)    For an Order awarding Plaintiff attorneys' fees;

    d)    For an Order awarding Plaintiff pre- and post-judgment interest at the highest rates allowed by law; and

    e)    For an Order granting such other and further relief as may be necessary and appropriate.

Dated: February 7, 2024.                          Respectfully submitted,

**GASPER LAW PLLC**

By:    */s/ Travis Gasper*
       Travis Gasper
       Texas Bar No. 24096881
       1408 N. Riverfront Blvd., Suite 323
       Dallas, Texas 75207
       Phone: (469) 663-7736
       Email: travis@travisgasper.com

**ATTORNEY FOR PLAINTIFF**